**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| FLOYD H. NELSON,<br><br>    Plaintiff,<br><br>   vs.<br><br>R. STANIFER,<br><br>    Defendant. | CASE NO. 03cv1516 JM(RBB)<br><br>**ORDER DENYING MOTION FOR SUMMARY JUDGMENT; DENYING LEAVE TO AMEND TO FILE THIRD AMENDED COMPLAINT** |

Defendant R. Stanifer moves for summary judgment on all claims alleged in Plaintiff Floyd H. Nelson's Second Amended Complaint ("SAC"). Plaintiff Floyd H. Nelson ("Nelson") opposes the motion for summary judgment and separately moves for leave to file a Third Amended Complaint ("TAC") to remove the requests for preliminary and permanent injunctive relief. Defendant opposes the motion to amend the complaint and did not file a reply brief to Plaintiff's opposition to the motion for summary judgment. Pursuant to Local Rule 7.1(d)(1), this matter is appropriate for decision without oral argument. For the reasons set forth below, the court denies the motion for summary judgment and denies Plaintiff's motion to amend the complaint.

**BACKGROUND**

Plaintiff brings this civil rights action pursuant to 42 U.S.C. §1983. The SAC alleges that Defendant, the Senior Hearing Officer at Centinela State Prison, denied him his due process rights to call witnesses and present documentary evidence at the time of the September 11, 2002 disciplinary

///

hearing in violation of his due process rights. He also alleges that Stanifer retaliated against him because he had filed two previous inmate complaints against Stanifer. (SAC ¶2).

Prior to the September 11, 2002 disciplinary hearing, Plaintiff filed two previous Form 602 appeals involving Stanifer. On June 9, 2002, Plaintiff filed an inmate appeal challenging Defendant's opposition to Plaintiff's release to the general inmate population. Plaintiff learned that Stanifer had falsely accused him of being a member of the Black Guerrilla Family ("BGF"). (SAC ¶6). Ultimately, on June 16, 2002 Plaintiff withdrew this inmate appeal when he was released into the general prison population. (SAC ¶7). On June 17, 2002 Plaintiff filed another inmate appeal against Defendant alleging that he displayed a 8" X 10" photograph of Plaintiff identifying him as a BGF gang member on the wall of his office for viewing by other inmates. (SAC ¶8). On September 7, 2002 Plaintiff alleges that Defendant made a statement to Plaintiff that the "filing of 602s (inmate appeals) against me (R. Stanifer) will come back to haunt you (Plaintiff) and do more harm to you than good." (SAC ¶9).

By way of further background to the disciplinary hearing, on December 11, 2001 Plaintiff was involved in an altercation with another inmate at the yard at Corcoran State Prison. (Stanifer Decl. ¶6). Plaintiff was found guilty of mutual combat at that hearing. The Investigative Report sets forth the details of the altercation. (Stanifer Decl., Exh. B). Upon Plaintiff's transfer to Centinela State prison, Plaintiff was granted a new hearing, scheduled for September 11, 2002. (Stanifer Decl. ¶5).

Prior to the start of the September 11, 2002 hearing, Plaintiff alleges that Stanifer made further comments of retaliation at the time of the disciplinary hearing. Defendant allegedly told Plaintiff "Remember what I told you the other day about filing 602s against me?," "you are now in my court," "you knew better than to file 602s against me, and "I will demonstrate to you the extent of my authority and the consequences for filing 602s against me." (SAC ¶12). Plaintiff allegedly informed Stanifer that "he was not prepared to proceed with the hearing and attempted to provide defendant Stanifer with a three page document outlining the inadequacies of the investigative employee (IE) report submitted by L. Boos Emma and the evidence needed by Plaintiff to present in defense and/or mitigation of the charge." (SAC ¶12). Plaintiff alleges that he agreed to sign a waiver of the presence of previously requested witnesses at the insistence of Stanifer. "Despite Plaintiff informing defendant

1  R. Stanifer that he was not prepared to proceed, the disciplinary hearing was held." Id. Stanifer would
2  not accept the three page document and Plaintiff alleges that such conduct was in retaliation for
3  Plaintiff's previous filing of inmate complaints. (SAC ¶14). Plaintiff alleges that "the finding of
4  guilty [of mutual combat] came as a direct result of defendant R. Stanifer's failure and refusal to
5  consider and review the three page document." (SAC ¶15). Plaintiff alleges that Defendant Stanifer's
6  conduct in denying him the right to present evidence at the time of the evidentiary hearing violated
7  his due process rights.

8  On July 28, 2003 Plaintiff filed the original complaint naming 47 Defendants. On October 7,
9  2003 the court granted Plaintiff's motion to proceed in forma pauperis but dismissed the complaint
10 without prejudice for failure to state a claim. On November 20, 2003 Plaintiff filed a First Amended
11 Complaint ("FAC"), adding six new Defendants. On February 10, 2004 the court dismissed the FAC
12 without prejudice.  The SAC only names Stanifer and, on May 14, 2004 the court concluded that the
13 SAC survived the screening provisions of 28 U.S.C. §§1915(e)(2)(B) and 1915A with respect to the
14 retaliation claim against Defendant Stanifer.  Defendant timely answered the complaint and now
15 moves for summary judgment on this claim.

16                                                    **DISCUSSION**

17 **Legal Standards**

18 A motion for summary judgment shall be granted where "there is no genuine issue as to any
19 material fact and . . . the moving party is entitled to judgment as a matter of law." FED. R. CIV. P.
20 56(c); British Airways Bd. v. Boeing Co., 585 F.2d 946, 951 (9th Cir. 1978), cert. denied, 440 U.S.
21 981 (1979). The moving party bears the initial burden of informing the court of the basis for its
22 motion and identifying those portions of the file which it believes demonstrates the absence of a
23 genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). There is "no
24 express or implied requirement in Rule 56 that the moving party support its motion with affidavits or
25 other similar materials negating the opponent's claim." Id. (emphasis in original). The opposing party
26 cannot rest on the mere allegations or denials of a pleading, but must "go beyond the pleadings and
27 by [the party's] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on
28 file' designate 'specific facts showing that there is a genuine issue for trial.'" Id. at 324, 106 S. Ct.

1  At 2553 (citation omitted).  The opposing party also may not rely solely on conclusory allegations
2  unsupported by factual data.  Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989).

3  The court must examine the evidence in the light most favorable to the non-moving party.
4  United States v. Diebold, Inc., 369 U.S. 654, 655 (1962).  Any doubt as to the existence of any issue
5  of material fact requires denial of the motion.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255
6  (1986).  On a motion for summary judgment, when "'the moving party bears the burden of proof at
7  trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence
8  were uncontroverted at trial.'"  Houghton v. South, 965 F.2d 1532, 1536 (9th Cir. 1992) (emphasis
9  in original) (quoting  International Shortstop, Inc. v. Rally's, Inc., 939 F.2d 1257, 1264-65 (5th Cir.
10  1991), cert. denied, 502 U.S. 1059 (1992)).

11  **The Due Process Claim**

12  The basic requirements of due process are the right to notice and the opportunity to be heard
13  "at a meaningful time and in a meaningful manner."  Logan v. Zimmerman Brush Co., 455 U.S. 422,
14  437 (1982).  The extent and manner of determining what process is due in any given situation depends
15  on "(1) the private interests at stake; (2) the risk that the procedure used will lead to erroneous results
16  and the probable value of the suggested procedural safeguard; (3) and the governmental interest
17  affected."  Little v. Streeter, 452 U.S. 1 (1981); see also Matthews v. Eldridge, 424 U.S. 319, 335
18  (1976).  This "balancing test" determines what the due process clause requires, even if state law or
19  prison regulations call for something different.  Cleveland Bd. Of Educ. v. Loudermill, 470 U.S. 532,
20  541 (1985); Vitek v. Jones, 445 U.S. 480, 491 (1980).

21  The Supreme Court has consistently held that prisoners "may not be deprived of life, liberty,
22  or property without due process of law," and has identified certain minimum procedures required by
23  the Due Process Clause which "insure that a state-created right is not arbitrarily abrogated."  Wolff
24  v. McDonnell, 418 U.S. 539, 556-57 (1973) (citations omitted).  Prisoners facing a disciplinary
25  hearing are entitled to: (1) written notice of the charges at least 24 hours in advance of the hearing;
26  (2) a written statement indicating upon what evidence the fact finders relied and the reasons for the
27  disciplinary action; (3) the opportunity to call witnesses and present documentary evidence when
28  doing so will not be unduly hazardous to institutional safety or correctional goals; and (4) an impartial

1  fact finder. Id. at 564-71. Once the court has decided that these minimal procedural due process
2  requirements have been met, its only remaining function is to determine whether there is "some
3  evidence" in the record that could support the conclusion reached by the disciplinary board.
4  Superintendent, Mass. Correctional Inst. v. Hill, 472 U.S. 445, 455 (1985).

5  Stanifer moves for summary judgment on grounds that (1) Plaintiff did not suffer any
6  punishment or adverse consequences as a result of the disciplinary proceeding; (2) Plaintiff failed to
7  exhaust available administrative remedies with regard to his retaliation claim; (3) there is no evidence
8  to support the retaliation claim; and (4) Defendant is entitled to qualified immunity.

9  <u>Adverse Consequences</u>

10  As set forth in Sandin v. Conner, 515 U.S. 472, 484 (1995), "there can be no due process
11  violation where the inmate was not subject to any discipline or loss of credits." Stanifer contends that
12  Plaintiff was not punished and therefore cannot state a due process claim "because the outcome had
13  no affect on the duration of his sentence." (Motion at p.6:5). Stanifer submits evidence indicating that
14  Plaintiff was not assessed a loss of credits or otherwise punished as a result of the disciplinary
15  proceeding. (Stanifer Decl. ¶16-17; Exh. A-04). As Plaintiff did not suffer any adverse consequences,
16  Defendant concludes that he cannot establish a due process violation under any circumstance.

17  In response to this evidentiary showing, Plaintiff comes forward to create a genuine issue of
18  material fact. Plaintiff's evidence indicates that, at the time of the altercation, Plaintiff held the prison
19  job of Chairman of the Mens Advisory Committee which entitled him to have the credit earning status
20  of Work Group A-1 pursuant to CCR §3043.5(a). (Plaintiff's Exh. C). Acting in this capacity,
21  Plaintiff received credit against his sentence. Under these circumstances, Plaintiff's calculation of the
22  earliest possible release date was April 23, 2006. (Exh. B). After the disciplinary hearing, Plaintiff
23  was placed in work group A-2 and no longer earned credits towards his sentence and did not receive
24  any credit while Plaintiff was placed in administrative segregation. Plaintiff's earliest release date was
25  extended to October 17, 2007 as a result of the altercation with inmate Payne. (Exh. J). Viewing this
26  evidence in the best light for Plaintiff, he appears to have suffered an adverse consequence thus
27  creating a genuine issue of material fact.
28  ///

1  In sum, the court finds that genuine issue of material facts prevent entry of summary judgment in favor of Stanifer on the issue of adverse consequences.

Exhaustion

Defendant contends that Plaintiff failed to exhaust the retaliation claim. The Prison Litigation Reform Act of 1995 requires prisoners seeking to bring a §1983 action to first exhaust "such administrative remedies as are available." 42 U.S.C. §1997e(a). Stanifer contends that Plaintiff did not exhaust his retaliation claim and therefor summary judgment is appropriate.

In order to administratively exhaust available remedies, a prisoner must pursue several levels of appeal: (1) informed resolution; (2) formal written appeal on a CDC Form 602 inmate appeal form; (3) second level of appeal to the institution head of designee; and (4) third level appeal to the Director of the California Department of Corrections. Barry v. Ratelle, 955 F.Supp. 1235, 1237 (S.D. Cal. 1997). Stanifer argues that Plaintiff did not adequately allege in the Form 602s that he was alleging retaliation by Stanifer as a substantial or motivating factor behind the decision to bar witnesses and documentary evidence at the time of the disciplinary proceeding. (Motion at p.10:3-6).

Plaintiff argues that he should be excused from completely exhausting the retaliation claim or, alternatively, the other exhausted claims alleging the same due process violations adequately placed Defendant on notice of this claim. Plaintiff comes forward with evidence to show that he filed an inmate appeal Form 602 with respect to the retaliation claim on September 15, 2002. The Form 602 alleges that Stanifer retaliated against him because of the previous Form 602s filed by Plaintiff. (Plaintiff's Exh. A1). However, Plaintiff does not produce any evidence that he pursued that appeal through the second or third levels of appeal. Plaintiff represents that he timely submitted the retaliation Form 602 on September 15, 2002 but "it became lost while in the sole possession of CEN prison officials." (Oppo. at p. 15:9-10; Stanifer Decl. ¶53). In support of his claim that he submitted a Form 602, Plaintiff submits a June 19, 2003 request for interview form indicating that he desired to interview prison officials to determine the status of his Form 602. (Plaintiff's Exhs. K1, L1.). Plaintiff also represents that three inmates observed him submit the Form 602 into the prison drop box, but that he has been unable to obtain declarations from these individuals to substantiate his claim.

///

1    In light of the evidence presented by Plaintiff, the court concludes that there is a genuine issue of material fact whether Plaintiff exhausted available remedies.

The Merits

Plaintiff claims that his due process rights were violated when (1) he was denied the opportunity to submit documentary evidence at the time of the hearing and (2) Stanifer retaliated against him for having previously filed Form 602s by refusing to allow him to call witnesses and present documentary evidence. In order to establish a claim for retaliation, "the inmate has the burden of showing that retaliation was the substantial or motivating factor behind the conduct of the prison official and that the alleged retaliatory acts did not advance the legitimate goals of the institution or were not narrowly tailored to achieve such goals." Torricellas v. Pool, 954 f. Supp. 1405, (C.D. Cal. 1997). Defendant contends that there is no evidence in the record to demonstrate that Plaintiff was denied the opportunity to present witnesses or documentary evidence at the time of the hearing. In support of this argument, Defendant submits a CDC 115 Form wherein Plaintiff signed the form indicating that he waived the presence of the reporting employee and previously requested witnesses. (Stanifer Decl., Exh. D). With respect to documentary evidence, Stanifer submits that Plaintiff never attempted to present any documentary evidence. (Stanifer Decl. ¶12). Stanifer also highlights inconsistencies with Plaintiff's claim. Stanifer argues that the documentary evidence described by Plaintiff is alternatively described as a four, three, and two page document when it is actually a two page document. (Stanifer Decl. Exhs, A, B). Plaintiff further represents that he was denied the opportunity to argue self-defense at the time of the disciplinary hearing. (Oppo. at p.10:19-21; Nelson Decl. ¶¶45-47). The court notes that Plaintiff's claim that he was prevented from arguing self defense is undermined by CDC 115 Form which indicates that, at the time of the September 11, 2002 hearing, Plaintiff pleaded "not guilty and gave the following testimony as his defense: 'It was self defense.'" (Plaintiff's Exh. Z).

Plaintiff's retaliation argument primarily consists of his testimony that Stanifer made several threatening statements. The thrust of Plaintiff's argument is that Stanifer said on several occasions that "filing 602s against me will haunt you," "you are now in my court," "you knew better than to file 602 against me . . . now I will demonstrate to you the extent of my authority and the consequences for

1  filing 602s against me," and "you will not be allowed to present this document (Exhibit Y) as evidence
2  nor will you be allowed to argue its contents as a defense during the hearing." (Plaintiff's Decl. ¶¶40-
3  49). The documentary evidence sought to be introduced by Plaintiff consists of his statement that his
4  defense is one of self defense and documents that purport to show that prison officials received
5  information about a threat made against Plaintiff's life, (Plaintiff's Exh. Y). Thus, the parties dispute
6  whether Plaintiff even sought to introduce any documentary evidence. As Plaintiff has a due process
7  right to submit documentary evidence, see Wolff, 418 U.S. at 564-71, the court concludes that
8  disputed issues of fact prevent entry of summary judgment in favor of Defendant.

9  In sum, the court denies summary judgment on the merits.

10  Qualified Immunity

11  Qualified immunity "shields § 1983 defendants '[f]rom liability for civil damages insofar as
12  their conduct does not violate clearly established statutory or constitutional rights of which a
13  reasonable person would have known.'" Devereaux v. Abbey, 263 F.3d 1070, 1074 (9th Cir. 2001)
14  (en banc) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Under Saucier v. Katz, 533 U.S.
15  194 (2001), the first step in the qualified immunity analysis is "to consider the materials submitted on
16  support of, and in opposition to, summary judgment, in order to decide whether a constitutional right
17  would be violated if all facts are viewed in favor of the party opposing summary judgment." Jeffers
18  v. Gomez, 267 F.3d 895, 909 (9th Cir. 2001). "If no constitutional violation is shown, the inquiry
19  ends." Cunningham v. City of Wenatchee, 345 F.3d 802, 810 (9th Cir. 2003). On the other hand, if
20  "the parties' submissions" create a triable issue of whether a constitutional violation occurred, the
21  second question is "whether the right was clearly established." Saucier, 533 U.S. at 201. A
22  constitutional right is clearly established when "it would be clear to a reasonable [government actor]
23  that his conduct was unlawful in the situation he confronted." Id. at 202.

24  Here, for the above stated reasons, the court concludes that it is clearly established that a
25  prisoner has a due process right to submit documentary evidence and call witnesses at a rules violation
26  hearing. See Wolf, 418 U.S. at 564-71. The evidence submitted by the parties raises a genuine issue
27  of material fact whether Plaintiff was denied that right. Accordingly, the court denies Stanifer's
28  motion for summary judgment on qualified immunity grounds.

**Motion to Amend the Complaint**

Plaintiff moves for leave to amend the complaint to eliminate the request for preliminary and permanent injunction seeking to rescind the finding of guilt. Stanifer opposes the motion. The court denies the motion to amend because Plaintiff fails to establish good cause why he did not comply with the scheduling order issued by Magistrate Judge Brooks on August 28, 2004. The scheduling order required Plaintiff to file a motion to amend the pleading no later than November 22, 2004. Accordingly, the motion to amend is denied without prejudice.

In sum, the court denies Stanifer's motion for summary judgment and denies Plaintiff's motion to amend the complaint. The court sets a telephonic status conference before Magistrate Judge Brooks on February 7, 2007 at 1:30 p.m. to discuss trial related matters, including the pretrial order, exhibits, and witnesses. The court sets a final telephonic pretrial conference before this court on February 22, 2007 at 11:30 a.m. Defendant is instructed to arrange for the telephonic conferences with Plaintiff at the scheduled times.[1] The court will schedule the trial date at the time of the pretrial conference.

**IT IS SO ORDERED.**

DATED: January 22, 2007

_____
Hon. Jeffrey T. Miller
United States District Judge

cc: All Parties

---

[1] Defendant is instructed to cooperate with Plaintiff to timely prepare a proposed pretrial conference order.